**UNITED STATES of America, Plaintiff-Appellant,**

v.

**Richard LEAL, Defendant-Appellee.**

**No. 84–2132.**

United States Court of Appeals, Fifth Circuit.

Feb. 3, 1986.

---

Daniel K. Hedges, U.S. Atty., James R. Gough, James L. Powers, Linda L. Lattimore, Asst. U.S. Attys., Houston, Tex., for plaintiff-appellant.

William H. Rosch, III, Neil McCabe, Houston, Tex., for defendant-appellee.

Before GEE and JOHNSON, Circuit Judges, and FISHER *, District Judge.

GEE, Circuit Judge:

In a jury trial before the United States District Court for the Southern District of Texas, appellee Richard Leal was found guilty of violating 18 U.S.C. § 1343 by using wire communications to further a fraudulent scheme. The district court then, without explanation, granted Leal's motion for a new trial. The parties agreed to waive a jury trial, instead submitting the transcripts of the first trial to the court. After reviewing this evidence, the court entered a judgment of acquittal from which the government now appeals. We hold that we have jurisdiction to hear this appeal and that the court erred in granting the new trial motion. We therefore reverse its judgment and remand the case for a reinstatement of the jury verdict.

The facts are undisputed on appeal. The husband of Mrs. Nora Follett drafted contractual wills for himself and his wife. Only after his death in the mid-1970's did Mrs. Follett discover that she had a mere life estate in her husband's property, with the remainder going to her stepdaughter, Aimee Purnell. She also found out that her own will bequeathed her estate to Mrs. Purnell. This arrangement was unsatisfactory to Mrs. Follett since she did not get along well with her stepdaughter and wished to leave her estate to her sister, Mrs. Bertha Evans. Because the wills were contractual, however, there appeared to be no way to avoid their terms.

Unfortunately for the sisters, both had befriended Leal and had come to rely on his financial advice. Leal now advised Mrs. Follett that, by selling much of the stock she owned and hiding the proceeds from her stepdaughter, she could secretly transfer her assets to Mrs. Evans. Leal himself sold the stock, eventually obtaining three checks, the largest of which was for $462,-631.91. He then inveigled Mrs. Follett into

---

* District Judge of the Eastern District of Texas, sitting by designation.

**1110**

exchanging the largest check for five Bank of the Southwest cashier's checks, each payable to Texas Commerce Bank. Four of these checks were for $100,000 each and the last was for $62,631.91. Leal next told the sisters that they could avoid taxes by transferring the cashier's checks to Mexico. Mrs. Follett followed his advice by wiring two of the $100,000 checks from Texas Commerce Bank to Banco BCH in Mexico. Leal journeyed to Mexico and soon returned with $85,000 cash, which he gave to the sisters. Convinced of his honesty by this partial return, the sisters wired the two remaining $100,000 checks to Banco BCH. No more cash was forthcoming, however; Leal instead kept $315,000, claiming that the unreturned amount was a gift from the sisters. Incredulous of his story, the federal government prosecuted Leal under § 1343 and now appeals the district court's judgment of acquittal.

█ We may not consider the merits of this case before determining whether we have jurisdiction over the appeal. While seldom disputed, appellate jurisdiction is problematic when the government appeals in a criminal case. Treading warily, therefore, we must first determine the object of the appeal. In its brief, the government claimed to appeal the district court's order granting new trial. If this were so, we could not review this case; 28 U.S.C. § 1291 grants us jurisdiction over final decisions of the district courts only. A new trial order in a criminal case is not a final decision. *See, e.g., United States v. Sam Goody, Inc.,* 675 F.2d 17, 21–22 (2nd Cir. 1982). Both in its notice of appeal and at oral argument, however, the government contended that the acquittal judgment is the object of its appeal. We accept this contention and view § 1291 as conferring jurisdiction upon us over the merits of this case.

█ Even so, we must still confront 18 U.S.C. § 3731, the statute specifying the circumstances in which the government may appeal an adverse ruling in a criminal case. We resolve this issue by adopting the rule and reasoning of *United States v.*

*Martinez,* 763 F.2d 1297, 1305–11 (11th Cir. 1985). In a case procedurally identical to ours, the Eleventh Circuit began its cogent argument by recognizing the applicability of § 3731 to judgments of acquittal despite the statute's narrow wording. *Id.* at 1309, *citing United States v. Martin Linen Supply Co.,* 430 U.S. 564, 568, 97 S.Ct. 1349, 1352, 51 L.Ed.2d 642 (1977), *and United States v. Boyd,* 566 F.2d 929, 931–33 (5th Cir.1978). The availability of an appeal depends not on statutory restrictions; rather, only the double jeopardy clause of the Fifth Amendment limits the government's power to do so. That provision protects a criminal defendant from repeated prosecutions. *Id., citing Martin Linen Supply Co.,* 430 U.S. at 569, 97 S.Ct. at 1353, *and United States v. Wilson,* 420 U.S. 332, 342–44, 95 S.Ct. 1013, 1021–22, 43 L.Ed.2d 232 (1975). If another trial would not result, if a criminal defendant would not be forced to endure the ordeal of a further fact finding process, then appealing a judgment of acquittal does not offend the Constitution. This appeal, like that of *Martinez,* does not effect double jeopardy because reversal would only require reinstating the jury verdict; further prosecution would be avoided. *See id.* at 1309–10, *citing, e.g., United States v. Black,* 644 F.2d 445, 446–47 (5th Cir.1981). We may therefore consider the case's merits.

Our consideration is hampered, however, because the district court failed to provide a formal explanation of why it ordered a new trial. Despite this failure, we glean the answer from the transcript of an October 31, 1983, hearing. The court there repeatedly referred to the erroneous admission into evidence of a taped conversation between Leal and government witness Kenneth Knop. Although Leal now contends that the order was based on the weight of the evidence—specifically, the court's unfavorable impression of the witnesses' credibility—the court explicitly denied the influence of witness credibility in his decision-making. We therefore see a perceived evidentiary error as the basis of the order.

Because no evidentiary error occurred, however, the new trial order was an abuse of discretion. While they constituted out of court statements, Leal's statements were not hearsay; a party's words, offered against him, form an exclusion to the definition of hearsay. Fed.R.Evid. 801(d)(2)(A). As long as Leal's statements were relevant to this case, which they apparently were, no reason existed for their exclusion. This being so, the new trial order was unjustified. We therefore REVERSE the final judgment of acquittal and REMAND the case to the district court for the entry of judgment consistent with the jury's verdict.