

In The

Court of Appeals

Seventh District of Texas at Amarillo

No. 07-20-00170-CR

THE STATE OF TEXAS, APPELLANT

V.

ALEJANDRO GONZALEZ, APPELLEE

On Appeal from the County Court at Law No. 2
Hays County, Texas
Trial Court No. 17-3245CR, Honorable Chris Johnson, Presiding

June 3, 2021

MEMORANDUM OPINION

Before QUINN, C.J., and PARKER and DOSS, JJ.

Appellant, the State of Texas, appeals the trial court's *sua sponte* order granting a mistrial in a DWI prosecution against Appellee, Alejandro Gonzalez, after the jury issued a guilty verdict.[1]  In a single point of error, the State asserts the trial court abused its discretion when it *sua sponte* granted a post-verdict mistrial in the absence of evidence

---

[1] Originally appealed to the Third Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts.  *See* TEX. GOV'T CODE ANN. § 73.001 (2013).  In the event of any conflict, we apply the transferor court's case law.  TEX. R. APP. P. 41.3.

supporting alleged jury misconduct and any showing of harm by Appellee. We reverse the trial court's order and remand for further proceedings consistent with this opinion.

## Background

In August 2017, an indictment issued alleging that on or about April 23 of the same year, Appellee operated a motor vehicle in a public place while he was intoxicated. In March 2020, a jury trial was held. After the jury was seated, the trial court instructed the jury not to discuss any testimony or evidence with fellow jurors before the trial's end and the beginning of deliberations.

The State's evidence established that DPS Trooper Roy Lytle observed Appellee exceeding the speed limit on a two-lane highway. He initiated his pursuit and confirmed his observations by radar. When he overtook Appellee's car, he turned on his overhead lights to signal a traffic stop. Appellee, however, continued past a shopping center parking lot and a side street without stopping. He ultimately pulled over in a private driveway.

Trooper Lytle approached Appellee's car and asked him to step out. As he exited, Appellee staggered onto the roadway. As he engaged Appellee, Trooper Lytle detected the odor of alcohol on his breath. Appellee shortly volunteered that he had earlier consumed a beer and vodka drink at a local bar and dropped what appeared to Trooper Lytle to be a cap from an alcoholic beverage/container.

Based on his observations, Trooper Lytle asked Appellee to perform three field tests to determine whether he was intoxicated: (1) horizontal gaze nystagmus test, (2) walk-and-turn test, and (3) one-leg stand. On all three tests, Appellee exhibited a

2

sufficient number of clues to indicate that he was intoxicated. Thereafter, Trooper Lytle placed him under arrest.

During a lengthy cross-examination at trial, Appellee's counsel challenged Trooper Lytle's ability to accurately administer the three field sobriety tests per the recommendations of the National Highway Transportation Safety Administration's manual. Appellee's counsel also inferred the test results were influenced by the conditions under which the tests were conducted, *i.e.*, it was cold, dark, and in near proximity to the roadway where cars were passing. The trial court recessed for lunch at 12:18 p.m. and instructed everyone that court would resume at 1:30 p.m.

Appellee alleges that at approximately 1:15 p.m. before court resumed, he overheard a conversation between three jurors. The conversation "struck [him] as being in violation of the rules [he] had heard the Judge . . . place on the jury. [He] knew that [the jurors] weren't supposed to be talking about the evidence until the judge told them to go back and deliberate about it when they were all together and after all the evidence was in."

Roughly fifteen minutes after the alleged juror conversation, court was called, the trial resumed, the parties closed presentation of evidence, and the trial court charged the jury, in pertinent part, as follows:

> As jurors, you review the evidence and determine facts and what they prove. You judge the believability of the witnesses and weight to be given their testimony. In judging the facts and the credibility of the witnesses, you must apply the law provided in these instructions.
>
> The evidence consists of the testimony and exhibits admitted at trial. You must consider only evidence to reach your decision. You must not consider, discuss, or mention anything that is not evidence in the trial.

3

You must not consider or mention any personal knowledge or information that you may have about any fact or person connected with this case that is not evidence in the trial.

While you should consider only the evidence, you are permitted to draw reasonable inferences from the testimony and exhibits that are justified in the light of common experience. In other words, you may make deductions and reach conclusions that reason, and common sense lead you to draw from the facts that have been established by the evidence. You are to render a fair and impartial verdict based on the evidence admitted in the case under the law that is in these instructions. Do not allow your verdict to be determined by bias or prejudice.

\* \* \*

You must not conduct any independent investigations, research, or experiments. Do not look up any words in dictionaries or on the Internet. Do not post information about the case on the Internet. Do not share any special knowledge or experiences.

The trial court then instructed the jury to follow its instructions and sent them to deliberate. Later that afternoon, the jury arrived at a verdict. Prior to bringing the jury in, the trial court inquired whether there were any reasons not to receive the verdict and both parties' counsel replied, "No." As the jury was entering the courtroom, Appellee "leaned over and told [his] attorney Kelly Higgins what [he] had heard that afternoon." Appellee's counsel did not object or raise the issue with the court at that point.

The trial court read the jury's verdict of guilty, and jurors each answered affirmatively that the verdict was their own. After the trial court discharged the jury, Appellee's counsel then informed the trial court that Appellee had overheard one juror talking to two other jurors in the hallway "about the fact that the officer should know what's in the manual . . . before the case was given to them." At the State's request, the jurors returned to the courtroom for individual questioning by the trial court.

4

Each juror was asked questions in a manner similar to those posed to the first juror:

> THE COURT: All right, [juror one], it's been brought to the Court's attention that perhaps there was some discussion between the jurors concerning the evidence and witness testimony prior to the Court's Charge having been given, perhaps on the way to lunch. Do you recall anything like that?
>
> THE [JUROR]: No.
>
> THE COURT: All right, I'm going to send you back out there, but I will admonish you not to discuss what we just talked about with the other jurors, please.

While jurors volunteered they discussed the NHTSA's manual and its requirements for executing a field sobriety test during deliberations, no juror recalled the alleged conversation prior to deliberations; each denied discussing any such conversation during deliberations. At the hearing's conclusion, the trial court requested briefing.

Appellee filed a motion for new trial alleging that certain jurors deliberated with outside information after being instructed by the trial court not to do so. In support, Appellee attached his affidavit alleging that when he was standing in the hallway outside the courtroom after lunch, he overheard three jurors discussing "*the case and specifically the relevancy of manuals and whether manuals for different jobs were followed or not*." One juror "*was saying he had a friend who worked in a federal job and was talking about his friend and whether or not he followed the manual for his job*."(Emphasis added).[2] In support of his motion, Appellee asserted (1) the jurors involved in the conversation

_____

[2] Appellee's hearsay affidavit is the only evidence of record of the occurrence and content of the alleged conversation.

received outside information, (2) the jurors' statements made during the conversation showed bias and impartiality, and (3) the jurors violated the trial court's instructions not to deliberate until instructed.

On March 30, the trial court granted Appellee's motion for a new trial and in response, the State requested that the trial court withdraw its order granting the motion because the order was void as a matter of law.[3] On April 7, 2020, without ruling on the State's request or withdrawing its order granting a new trial, the trial court *sua sponte* issued an order declaring a mistrial. In its order, the trial court found that certain jurors' testimony at the post-verdict hearing was not credible."[4]

On appeal, the State asserts the trial court abused its discretion when it granted a post-verdict mistrial absent any evidence supporting juror misconduct or harm to Appellee. Appellee responds that the State's appeal should be dismissed for want of jurisdiction and the trial court did not abuse its discretion. For the reasons set forth below, we agree with the State.

---

[3] The State asserted that the order granting Appellee a new trial was void because he had yet to be sentenced. An order for new trial comes only after sentence is imposed in a completed trial. *Ocon v. State,* 284 S.W.3d 880, 883 n.1 (Tex. Crim. App. 2009) (quoting *Rodriguez v. State*, 852 S.W.2d 516, 518 (Tex. Crim. App. 1993 (en banc)).

[4] The trial court's order fails to specify which jurors or answers that were not credible. However, in a footnote to its order granting Appellee's motion for a new trial, the trial court indicates that it questioned the credibility of two of the six jurors. The court's orders refer to a security video of three jurors waiting outside the courtroom. The video is not included in the record, however. Materials not filed with the county clerk as part of the record of the case are considered outside the record. *Martinez v. State*, No. 13-10-00138-CR, 2012 Tex. App. LEXIS 1303, at *17 (Tex. App.—Austin Feb. 16, 2012, no pet.) ("The court cannot consider matters outside the appellate record."). Hence, the video's contents cannot be considered by this Court. *Id. See San Antonio v. Anderson*, 343 S.W.2d 950, 952 (Tex. Civ. App.—Eastland 1961) ("An appellate court may not assume the existence of facts not shown by the record.").

Alleged Absence of Appellate Jurisdiction

As a preliminary matter, Appellee argues this Court lacks jurisdiction to reach the merits of the State's appeal because the order appealed from is an order granting a mistrial. According to Appellee, the State may appeal only from the orders listed in article 44.01(a) of the Texas Code of Criminal Procedure, which does not include an order granting a mistrial. *See* TEX. CODE CRIM. PROC. ANN. 44.01(a) (West 2018). The State asserts this Court has jurisdiction over the State's appeal under article 44.01(a)(3) because, in accordance with applicable case law, an order granting a mistrial, like the order issued in this case, is "functionally indistinguishable" from an order granting a new trial, which the State may appeal pursuant to article 44.01(a). We agree with the State.

In *Garza v. State*, 774 S.W.2d 724 (Tex. App.—Corpus Christi 1989, no pet.), the court allowed the state to appeal a post-verdict grant of a mistrial, holding that "a post-verdict mistrial ruling which returns the case to the posture in which it had been in before trial is 'functionally indistinguishable' from an order granting a new trial." *Id.* at 726. And, when an order is the functional equivalent of an order granting a new trial, the reviewing court may look past the label assigned to the order and treat it as an order granting a new trial. *State v. Savage*, 933 S.W.2d 497, 499 (Tex. Crim. App. 1996). *See also State v. Boyd*, 202 S.W.3d 393, 400 (Tex. App.—Dallas 2006, pet. ref'd); *Yates v. State*, 171 S.W.3d 215, 220-21 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd).

Here, as in *Garza*, the trial court issued an order for mistrial after the jury had returned a guilty verdict but before the punishment phase began. *See Garza*, 774 S.W.2d at 725. We conclude the trial court's mistrial order is functionally indistinguishable from

7

a grant of a new trial. *See* TEX. CODE CRIM. PROC. ANN. art. 44.01(a)(3) (2018); *Savage*, 933 S.W.2d at 499. Accordingly, we exercise our jurisdiction to review the State's appeal of that order.

Alleged Abuse of Discretion in Granting a Mistrial

A trial court's grant or denial of a motion for mistrial is reviewed for abused discretion. *State v. Doyle*, 140 S.W.3d 890, 894 (Tex. App.—Corpus Christi 2004, no pet.) (citing *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999)). A trial court does not abuse its discretion "so long as the result is not reached in an arbitrary or capricious manner." *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990). *See Canada v. State*, 547 S.W.3d 4, 12 (Tex. App.—Austin 2017, no pet.). Moreover, because a motion for new trial and mistrial are functional equivalents, we may look to standards of review for granting or denying a motion for new trial. *Yates*, 171 S.W.3d at 220-21 (citing *Garza*, 774 S.W.2d at 726).

A trial court has discretion to declare a mistrial *sua sponte* when "in [its] opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated." *Torres v. State*, 614 S.W.2d 436, 442 (Tex. Crim. App. [Panel Op.] 1981). It is an appropriate remedy in "extreme circumstances" for a narrow class of highly prejudicial and incurable errors. *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App., 2009).

The power to grant a mistrial *sua sponte* should be used with "the greatest caution, under urgent circumstances, and for very plain and obvious reasons." *Id.*; *Parrish v. State*, 38 S.W.3d 831, 834 (Tex. App.—Houston [14th Dist.] 2001, no pet.). There must

be a "high degree" of necessity that the trial come to an end; *Torres,* 614 S.W.2d at 442, and the circumstances must (1) render it impossible to arrive at a fair verdict before the initial tribunal, (2) render it impossible to continue the trial, or (3) involve trial error that would trigger an automatic reversal on appeal if a verdict was returned. *Ex parte Garza*, 337 S.W.3d 903, 909 (Tex. Crim. App. 2011).

In his motion for a new trial, Appellee asserted that jurors received outside information in violation of article 36.22 of the Texas Code of Criminal Procedure. Article 36.22 states "[n]o person shall be permitted to converse with a juror about the case on trial except in the presence and by the permission of the court." TEX. CODE CRIM. PROC. ANN. art. 36.22 (West 2006). A violation of article 36.22 constitutes juror misconduct. *See Ocon*, 284 S.W.3d at 885. The defendant has the burden of proving the allegations of juror misconduct. *Hughes v. State*, 24 S.W.3d 833, 842 (Tex. Crim. App. 2000).

Case law is clear that the affidavit requirement under article 36.22 requires something more than mere allegation of juror misconduct to avoid "fishing expeditions" by defendants. *Prytash v. State,* 3 S.W.3d 522, 537 (Tex. Crim. App. 1999) (en banc). In accord, a non-juror's affidavit based on hearsay is not sufficient to establish material jury misconduct and satisfy this requirement. *Martin v. State*, 823 S.W.2d 391, 393 (Tex. App.—Texarkana 1992, pet. ref'd) (affidavit of defendant's counsel recounting what a juror allegedly told him was not admissible evidence and not entitled to consideration as evidence of juror misconduct). Appellee's reliance on his hearsay affidavit is insufficient to raise juror misconduct as grounds for a new trial. *See Hines v. State*, 3 S.W.3d 618, 623 (Tex. App.—Texarkana 1999, pet. ref'd) (motion for new trial based on jury

9

misconduct must be supported by a juror's affidavit alleging that outside influence affected the jury's decision).

Moreover, even if we assume Appellant's affidavit constitutes evidence of the jurors' conversation, we hold that any claim under article 36.22 fails because there is no evidence of communication between jurors and an outsider or unauthorized person. *See O'Bryant v. State*, 437 S.W.3d 578, 581-82 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (concluding no violation of article 36.22 where jurors conversed with each other about the case in violation of the court's instructions, because no communication occurred between any juror and an outsider or unauthorized person). Appellee's allegation that a juror recounted his personal experience with a friend at some unspecified time does not constitute an outside influence under article 36.22. *See McBurnett v. State,* No. 04-11-00021-CR, 2012 Tex. App. LEXIS 5300, at *11 (Tex. App.—San Antonio July 5, 2012, pet. ref'd) ("A juror's injection of his own personal experiences, knowledge, or expertise is not considered an outside influence, because those representations emanate from the jury.") There is no evidence that the juror's friend influenced any juror during the pendency of this trial.

Appellee also asserted the juror's statements indicated a bias in favor of law enforcement. When a sitting juror makes statements outside of deliberations that indicate bias or impartiality, such bias can constitute juror misconduct that prohibits the accused from receiving a fair and impartial trial. *Granados v. State*, 85 S.W.3d 217, 235 (Tex. Crim. App. 2002). However, to prove misconduct, a defendant must show that (1) the misconduct occurred and (2) the misconduct resulted in harm to the movant. *Gomez v. State*, 991 S.W.2d 870, 871 (Tex. App.—Houston [1st Dist.] 1992, pet. ref'd). *See*

10

*Whitworth v. State*, No. 12-00038-CR, 2010 Tex. App. LEXIS 7191, at *6 (Tex. App.—Tyler 2010, no pet.). This claim suffers from the same evidentiary infirmities as Appellee's article 36.22 claim—Appellee's affidavit is hearsay and therefore inadmissible. However, even assuming Appellee were able to produce admissible evidence supporting his affidavit, the statements do not evidence bias in favor of either side.

The trial court's *sua sponte* order declaring a mistrial characterizes the jurors' alleged conversation as "deliberations," however, the foregoing demonstrates there was no admissible evidence before this Court to support the trial court's finding. Moreover, assuming such "deliberations" occurred, they occurred after the parties had rested and were made within mere minutes of when the jury was sent to deliberate. We hold such a violation, if it occurred, would not be harmful *per se* to any party's substantial rights. *See Bogue v. State*, 204 S.W.3d 828, 829-30 (Tex. App.—Texarkana 2006, pet. ref'd) (holding that trial court error in permitting alternate juror to remain with deliberating jury for thirteen minutes did not constitute harmful juror misconduct absent evidence of how alternate's presence influenced the jury's verdict); *Hegar v. State*, 11 S.W.3d 290, 295 (Tex. App.—Houston [1st Dist.] 1999, no pet.) (holding that error in prematurely releasing juror not harmful when no evidence shows the juror was influenced by external sources during the few hours of his absence before reporting back to court). We hold the trial court's grant of a mistrial was in the absence of any evidence of juror misconduct or harm.[5] Because the trial court abused its discretion, the State's issue is sustained.

---

[5] We note that while a judge may grant a motion for new trial "in the interest of justice," "'justice' means in accordance with the law." *State v. Thomas*, 428 S.W.3d 99, 99, 105 (Tex. Crim. App. 2014). "In the interest of justice" is not an independent basis for granting a criminal defendant a new trial. *Id.* "There

Conclusion

The trial court's *sua sponte* order declaring a mistrial is reversed and this cause is remanded for proceedings in conformity with this opinion.


                                        Lawrence M. Doss
                                        Justice


Do not publish.

---

must be some legal basis underpinning the grant of a new trial, even if it is granted in the interest of justice."
*Id.*